1    **WO**

2

3

4

5

6                **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9

10   Timothy Hunt, et al.,                          No. CV-16-08280-PCT-GMS

11                  Plaintiffs,

12   v.                                             **ORDER**

13   Asher Davis, et al.,

14                  Defendants.

15

16

17          Pending before the Court is Defendants Asher Davis and Navajo County's

18   (collectively "Defendants") Motion for Summary Judgment. (Doc. 91.) For the following

19   reasons, the Motion is granted.[1]

20                                **BACKGROUND**

21   **I.    Procedural History**

22          On November 26, 2016, Plaintiff Timothy Hunt filed his complaint pursuant to 42

23   U.S.C. § 1983 alleging a claim of Fourth Amendment-based judicial deception in obtaining

24   a warrant to search for physical characteristics. The original complaint named, as

25

26

27   ───────────
     [1] The parties have requested oral argument. Those requests are denied because the parties
28   have had an adequate opportunity to discuss the law and evidence and oral argument will
     not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu
     Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

1
2
defendants, former Sheriff Detective Asher Davis ("Davis"), Sheriff Commander Nathan Christensen, Navajo County Sheriff Kelly Clark, and Navajo County.

3
4
5
6
7
8
In response to Defendants' first motion to dismiss, the Court's May 15, 2017 Order declined to conclude Detective Davis was entitled to qualified immunity based on the allegations in the complaint, but dismissed the claims against Navajo County, Christensen and Clark because Hunt failed to allege a plausible *Monell* claim against the County and Defendants Christensen and Clark were entitled to qualified immunity. Hunt was granted leave to file an amended complaint.

9
10
11
12
13
14
15
16
17
18
Hunt's First Amended Complaint continued to allege a Fourth Amendment-based claim of judicial deception in obtaining a warrant but excluded the Christensens as defendants. In its August 16, 2017 Order, responding to a subsequent motion to dismiss, the Court determined the amended complaint plausibly pleaded that Sheriff Kelly Clark ratified the allegedly unconstitutional conduct of Davis. As a result, the Court denied Sheriff Clark qualified immunity and found the amended complaint stated a plausible claim against Navajo County. The Clarks and the County appealed to the Ninth Circuit Court of Appeals, which reversed as to the Clarks individually, granting Sheriff Clark qualified immunity in his individual capacity, and dismissed as to the County (or any person sued in their official capacity) for lack of pendent jurisdiction.

19
**II.    Factual Background**

20
21
22
23
24
25
From 2012 to 2014, Hunt was a Navajo County detention officer in the Navajo County Jail. On April 22, 2014 a confidential informant, K.L., informed Navajo Country Sheriff's Deputies that Hunt received oral sex from "S.W.," a female inmate, in exchange for supplying her with contraband. In July 2014, after an internal investigation had been completed, Davis was assigned to conduct a criminal investigation into the allegations. Davis was instructed not to rely on any information obtained in the internal investigation.

26
27
28
As part of his investigation, Davis interviewed numerous witnesses and detention officers. With some variation, six witnesses reported that Hunt took S.W. from her pod to clean mop buckets around 3:00 a.m. on or about January 5, 2014. When S.W. returned, she

1    reported to numerous inmates that she had performed oral sex on an uncircumcised Hunt

2    in a room adjacent to the jail shower and had spit out Hunt's ejaculate. Several witnesses

3    reported that soon after S.W. returned to the pod, Hunt delivered two menthol cigarettes in

4    a sandwich bag to the pod. After attending a DNA evidence collection training seminar,

5    Davis found and collected semen samples from a location matching the description of

6    where S.W. told her fellow inmates she performed oral sex on Hunt. This collection was

7    conducted nearly eight months after the alleged incident.

8         In November 2014, Davis incorporated the information learned from his

9    investigation into an affidavit used to obtain a physical characteristics search warrant. The

10   search warrant authorized the collection of DNA swabs, and blood for DNA testing to

11   compare Hunt's DNA to the DNA contained in the samples collected by Davis.  It further

12   authorized photographs of Hunt's genitals to determine whether Hunt was circumcised.

13        Hunt claims Davis' search warrant was unconstitutionally obtained by judicial

14   deception because his affidavit included material falsehoods and omissions. Hunt also

15   asserts the search warrant was facially invalid due to the significant time and intervening

16   events that occurred between the alleged sexual encounter with S.W. and Davis' collection

17   of semen samples. As a result of Davis' alleged violations of Hunt's Fourth Amendment

18   rights, Hunt claims Davis is not entitled to qualified immunity in this action. Hunt further

19   contends that Navajo County should also be liable for the alleged Fourth Amendment

20   violations because its final policy maker ratified Davis' allegedly unconstitutional conduct.

21                                          **DISCUSSION**

22   **I.    Legal Standard**

23        The purpose of summary judgment is "to isolate and dispose of factually

24   unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary

25   judgment is appropriate if the evidence, viewed in the light most favorable to the

26   nonmoving party, shows "that there is no genuine issue as to any material fact and that the

27   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes

28   over facts that might affect the outcome of the suit will preclude the entry of summary

1    judgment, and the disputed evidence must be "such that a reasonable jury could return a

2    verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

3    (1986).

4         "[A] party seeking summary judgment always bears the initial responsibility of

5    informing the district court of the basis for its motion and identifying those portions of [the

6    record] which it believes demonstrate the absence of a genuine issue of material fact."

7    *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to

8    particular parts of materials in the record" establishing a genuine dispute or "show[ ] that

9    the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P.

10   56(c)(1). A district court has no independent duty "to scour the record in search of a

11   genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

12   **II.     Analysis**

13           **A.     Davis – Qualified Immunity**

14           "Qualified immunity shields federal and state officials from money damages unless

15   a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional

16   right, and (2) that the right was 'clearly established' at the time of the challenged conduct."

17   *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). Hunt argues that Davis is not entitled to

18   qualified immunity because Davis violated Hunt's clearly established Fourth Amendment

19   rights by (1) obtaining a search warrant through judicial deception; and (2) executing a

20   warrant that was facially invalid.

21           **1.     Judicial Deception**

22           "It is clearly established that judicial deception may not be employed to obtain a

23   search warrant." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (citing *Franks v.*

24   *Delaware,* 438 U.S. 154, 155–56 (1978)). "To support a § 1983 claim of judicial deception,

25   a plaintiff must show [(1)] that the defendant deliberately or recklessly made false

26   statements or omissions [(2)] that were material to the finding of probable cause." *Id.* If

27   such a showing is made, qualified immunity is lost. *Hervey v. Estes*, 65 F.3d 784, 789 (9th

28   Cir. 1995). To reach a jury, the showing of deliberate falsity or reckless disregard must be

1    substantial. *Id.* at 788 (explaining that in a judicial deception case "the plaintiff must satisfy

2    a still higher standard to survive summary judgment"; he or she must make a "substantial

3    showing of deliberate falsehood or reckless disregard for truth"). The materiality question,

4    however, is reserved for the court. *Id.* at 789; *see also KRL v. Moore*, 384 F.3d 1105, 1117

5    (9th Cir. 2004) ("The court determines the materiality of alleged false statements or

6    omissions."). To establish a falsehood or omission was material, the plaintiff must show

7    that the magistrate would not have issued the warrant without the dishonestly included or

8    omitted information. *Hervey*, 65 F.3d at 789. "The effect of the misrepresentations and

9    omissions on the existence of probable cause is considered cumulatively." *United States v.*

10   *Stanert*, 762 F.2d 775, 782 (9th Cir. 1985), *amended*, 769 F.2d 1410 (9th Cir. 1985).

11        Hunt claims Davis' affidavit falsely stated that the victim, S.W., "is not to leave the

12   pod." (Doc. 92-43 at 3.) Hunt further asserts that the accusation Hunt provided another

13   inmate with Zanyx was based on unreliable information and was improperly included to

14   show a false pattern of conduct. In addition to these alleged falsities, Hunt claims Davis

15   omitted material information regarding the credibility of the witnesses. Specifically, Hunt

16   contends Davis omitted information regarding three of the witness' criminal histories

17   involving dishonesty and one witness's statements demonstrating bias.

18        However, even assuming Hunt can demonstrate a disputed question of fact that the

19   alleged misstatements and omissions were intentionally or recklessly incorporated into the

20   affidavit, they were immaterial. Stated differently, once the affidavit is corrected and

21   supplemented it still provided the magistrate with a substantial basis for concluding that

22   probable cause existed—entitling Davis to qualified immunity. *See Advanced Building &*

23   *Fabrication, Inc. v. Cal. Highway Patrol*, 781 Fed. Appx. 608, 610 (9th Cir. 2019) (holding

24   that the district court erred in denying a defendant qualified immunity where the alleged

25   misrepresentation in the affidavit was immaterial).

26        Taking the facts in the light most favorable to Hunt, a truthful version of Davis's

27   affidavit would have illustrated a single event in which S.W. was removed from her pod to

28   prepare mop buckets in accordance with typical procedure. A supplemented affidavit

1   would further reveal that three of the six witness that corroborated S.W.'s story had a

2   criminal history including crimes of dishonesty,[2] and that one of these three witnesses had

3   inquired during her interview how talking to Davis would "help her cause" and requested

4   that her friend, S.W., be given time off in exchange for the witness's cooperation in the

5   investigation. The affidavit, however, would also have reflected that six witnesses

6   independently recounted that S.W. had prior flirtations with Hunt, that she had left the pod,

7   that she had claimed to have performed oral sex on Hunt during her absence, and that not

8   long after S.W.'s return Hunt delivered two cigarettes hidden in a sandwich bag.

9          "While there is no 'numerically precise degree of certainty corresponding to

10  probable cause, . . . it is clear that only the probability, and not a prima facie showing, of

11  criminal activity is the standard of probable cause.'" *Chism v. Washington State*, 661 F.3d

12  380, 389 (9th Cir. 2011) (quoting *Illinois v. Gates,* 462 U.S. 213, 235 (1983)); *see also*

13  *U.S. v. Henderson*, 241 F.3d 638, 648 (9th Cir. 2000) ("Officers have probable cause for a

14  search when the known facts and circumstances are sufficient to warrant a man of

15  reasonable prudence in the belief that contraband or evidence of a crime will be found.")

16  (internal quotations omitted). Witness credibility is highly relevant to the probable cause

17  inquiry. *United States v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005) ("In

18  making [the probable cause] evaluation, we consider the credibility of the informant,

19  including his history of providing reliable information in previous investigations and any

20  prior criminal convictions for crimes of dishonesty."). As a result, when a witness has a

21  history of dishonesty or a personal bias there must be additional evidence in the affidavit

22  to bolster the witness's credibility or the reliability of the information. *United States v.*

23  *Elliott*, 322 F.3d 710, 716 (9th Cir. 2003). Detailed statements and corroboration are such

24  evidence. *See Martinez-Garcia*, 397 F.3d at 1216 (explaining that the court must also

25  "examine whether the informant's information was bolstered by independent police

26  investigation of the tip or corroboration by other confidential informants" to determine if

27  ---
[2] Ms. Terri Hill had twice been convicted of false reporting at the time Davis wrote his
28  affidavit; Ms. Sarah Means had been arrested and charged for a drug offense in which she
    supplied a police officer with a fake name during her arrest; and J.P. had been arrested for
    stealing drugs from her place of employment.

1  the affidavit demonstrated probable cause); *see also KRL*, 384 F.3d at 1118 (holding that
2  omitted information regarding a witness's criminal history, grudge against the suspects,
3  and lack of corroboration by a supposed eye witness did not materially affect a finding of
4  probable cause to support issuing a search warrant where many of the witness's statements
5  were investigated and corroborated by other witnesses whose credibility was not
6  challenged); *Lombardi*, 117 F.3d at 1126–27 (holding that omitted indicia of hostility was
7  not material where the allegedly hostile witnesses' statements were detailed, given
8  independently, corroborated by each other, and against one witness's penal interest).

9       Any credibility concerns omitted from the affidavit are overcome by the level of
10  detail provided in the independently given statements and the extensive corroboration of
11  the statements by the jail logs and multiple other witnesses—many of whose credibility is
12  not challenged. Any false suggestion that S.W. was not to leave the pod or that there were
13  other instances of Hunt providing inmates with contraband does not vitiate the six
14  independent accounts of Hunt's alleged misconduct with S.W. When the totality of the
15  circumstances are considered, the corrected affidavit would have provided the magistrate
16  with a substantial basis to conclude that a crime had been committed, that Hunt had
17  committed that crime, and that there was a fair probability evidence of the crime would be
18  found by the requested search. The alleged falsehoods or omissions are immaterial as a
19  matter of law; Davis is entitled to qualified immunity for his statements in the affidavit.

20       **2.      Execution of Warrant**

21       Hunt claims Davis' execution of the warrant violated Hunt's Fourth Amendment
22  rights because no reasonable officer (1) "could have expected to compare Mr. Hunt's DNA
23  profile" to any biological material collected over eight months after the alleged incident
24  from an area that had been used and cleaned a number of times since the incident; (2)
25  "would have drawn Mr. Hunt's blood when there was so little chance of producing a
26  match"; or (3) would have taken photos of Mr. Hunt's genitals rather than requesting a
27  declaration from Mr. Hunt with respect to whether he was circumcised.
28  / / /

1    Even if Hunt's contentions amount to constitutional violations, Davis is entitled to

2    qualified immunity unless Hunt can demonstrate that his allegedly violated rights were

3    clearly established at the time Davis acted.[3] A right is clearly established when "'[t]he

4    contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have

5    understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731,

6    741 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)) (alterations in

7    original). "Plaintiffs must point to prior case law that articulates a constitutional rule

8    specific enough to alert *these* deputies *in this case* that *their particular conduct* was

9    unlawful. To achieve that kind of notice, the prior precedent must be 'controlling'—from

10   the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts

11   outside the relevant jurisdiction." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir.

12   2017).

13   Here, Hunt failed to offer a case that meets this standard. Instead, Hunt provides the

14   Court with the general principle that the Fourth Amendment prohibits unreasonable

15   searches and reasonableness is determined "by assessing, on the one hand, the degree to

16   which it intrudes upon an individual's privacy and, on the other, the degree to which it is

17   needed for the promotion of legitimate governmental interests." (Doc. 93 at 12) (quoting

18   *United States v. Knights*, 534 U.S. 112, 118–19 (2001)). However, application of general

19   principles is not sufficient to deny qualified immunity. *Sharp*, 871 F.3d at 910 ("The

20   Supreme Court has repeatedly instructed that we examine whether the violative nature

21   of *particular* conduct is clearly established by controlling precedent, not whether the

22   conduct violates a general principle of law.") (internal quotations omitted). The only other

23   authorities provided by Hunt are two non-controlling cases suggesting that blood draws

24   and strip-like searches are more invasive than other types of searches that were available

25   to Davis at the time the warrant was executed. Notably, the cases do not hold that a search

26

27   [3] Lower courts have discretion to choose which prong of the qualified immunity analysis to address first. *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). The Supreme Court cautioned lower courts to "think carefully before expending 'scarce judicial resources' to

28   resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *Id.*

1    must be conducted in the least invasive manner or that blood draws or strip-like searches

2    are per se unreasonable under like circumstances. Thus, not only are Hunt's cases non-

3    controlling, but they also provide little more than general principles of law. Hunt failed to

4    provide any authority that would have informed Davis that his particular conduct executing

5    the warrant in this case was unlawful. Because Hunt has not met his burden to establish his

6    allegedly violated rights were clearly established at the time of the alleged misconduct,

7    Davis is entitled to qualified immunity and summary judgment.

8    **B.    Navajo County**

9    A municipality may be liable for constitutional violations under § 1983 if a final

10   policy maker ratifies unconstitutional conduct. *Clouthier v. Cty. of Contra Costa*, 591 F.3d

11   1232, 1249–50 (9th Cir. 2010) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436

12   U.S. 658, 708 (1978)), *overruled on other grounds*, *Castro v. Cty. of Los Angeles*, 833 F.3d

13   1060 (9th Cir. 2016). Hunt argues that the Navajo County should be liable for Davis'

14   allegedly unconstitutional conduct because the County's final policy maker, Sheriff Kelly

15   Clark,[4] "ratified the acts of Defendant Davis in procuring and executing the search

16   warrant." (Doc. 93 at 13.) With respect to Davis' procurement of the search warrant, Hunt's

17   ratification claim is based on Sheriff Clark's alleged statements approving of the warrant

18   application and the facts alleged therein. However, because the Court has concluded the

19   falsehoods and omissions in the affidavit were not material, there is no constitutional

20   violation upon which a ratification claim can be based.

21   To the extent Hunt asserts Sheriff Clark ratified Davis' allegedly unconstitutional

22   execution of the warrant, Hunt has not pointed to any evidence in the record to support

23   such a claim. To demonstrate ratification, Hunt must provide some evidence of a conscious,

24   affirmative choice by the policymaker to approve Davis' decision and the basis for it.

25   *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992). Hunt has provided a recording

26   of Davis saying "the Sheriff is going to say this is a golden case" after Davis executed the

27   search warrant and learned Hunt was uncircumcised. A statement from Davis speculating

28   ---
[4] It is undisputed that Sheriff Clark was the final policy maker for Defendant Navajo County at all relevant times.

1   about what the Sheriff may think of the evidence is not evidence of affirmative or deliberate

2   conduct by Sheriff Clark. Sheriff Clark's failure to discipline Davis for his conduct

3   similarly fails to demonstrate ratification. *Id.* (finding no ratification where the policymaker

4   failed to overrule or object to the subordinate's conduct because some evidence of

5   affirmative or deliberate conduct is required). Because Hunt has not demonstrated that a

6   genuine issue of fact exists with respect to Sheriff Clark's ratification of any alleged

7   unconstitutional conduct, Defendant Navajo County is entitled to summary judgment.

8                        **CONCLUSION**

9        Davis is entitled to qualified immunity for procuring and executing the warrant,

10   and Hunt has failed to demonstrate a disputed issue of material fact exists with respect to

11   Navajo County's ratification of Davis' alleged misconduct.

12        **IT IS HEREBY ORDERED** that Defendants Asher Davis and Navajo County's

13   Motion for Summary Judgment (Doc. 91) is **GRANTED.**

14        **IT IS FURTHERED ORDERED** directing the Clerk of Court to enter judgment

15   accordingly and terminate this action.

16        Dated this 27th day of April, 2020.

17

18   _____

G. Murray Snow

19   Chief United States District Judge

20

21

22

23

24

25

26

27

28